IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

DERRICK WEARRY    :  CIVIL ACTION
 [DF-6291]      :
          :
  v.        :
          :
CONNER BLAINE, et al.   :  NO. 02-2913

**O R D E R**

AND NOW, this    day of       , 2003,

upon consideration of the pleadings and the record herein, and after review of the Report and

Recommendation of M. Faith Angell, United States Magistrate Judge, it is hereby ORDERED

that:

  1.  The Report and Recommendation is **APPROVED AND ADOPTED**.

  2.  The Petition for Writ of Habeas Corpus is **DENIED AND DISMISSED**

    **WITHOUT AN EVIDENTIARY HEARING**.

    There is no probable cause to issue a certificate of appealability.

    BY THE COURT:

    _____
    MARVIN KATZ,    J.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

DERRICK WEARRY          :          CIVIL ACTION
  [DF-6291]             :
                       :
      v.               :
                       :
CONNER BLAINE, et al.   :          NO. 02-2913


## REPORT AND RECOMMENDATION

M. FAITH ANGELL
UNITED STATES MAGISTRATE JUDGE                May 30, 2003


   Presently before this Court is a *pro se* Petition for Writ of Habeas Corpus filed,

pursuant to 28 U.S.C. §2254, by a state prisoner.  Petitioner is currently incarcerated at State

Correctional Institution ["SCI"] Greene in Waynesburg, Pennsylvania, where he is serving a life

sentence for first degree murder, plus a concurrent five to ten year sentence for robbery and

related offenses.  For the reasons which follow, it is recommended that the Petition for Writ of

Habeas Corpus be denied and dismissed without an evidentiary hearing.

## BACKGROUND[1]

  On April 9, 1997, following a jury trial before the Honorable Robert A. Latrone of the

Philadelphia County Court of Common Pleas, Petitioner was convicted of first degree murder,

robbery, criminal conspiracy, and possession of an instrument of crime ["PIC"].  *See* State Court

Record: July 26, 2001 Superior Court Opinion at p. 1.

---

[1] The facts in this discussion have been taken from Mr. Wearry's habeas petitions and
memorandum of law in support, the Commonwealth's response, and the state court records.

The facts underlying Petitioner's convictions were described by the trial court as follows:

"On January 25, 1995, Yang Chan Cheung, the deceased, was working at the Maytag Laundromat located at 2552 North Broad Street at the southwest corner of Broad and York Streets in Philadelphia. The Maytag Laundromat was owned by Cheung's niece, Hee Chan. Emmanuel Young, the Commonwealth's key witness, testified that on January 25, 1995, at approximately 4:00 o'clock P.M., he was talking to his girlfriend, Sara Miller, on a pay phone at a gas station near Broad and York Streets. At that time, Derrick Wearry, this defendant, walked by Young. Young knew Wearry from the neighborhood. As Wearry was walking by, Young asked him where he was going. Wearry replied: 'On a paper mission.' Young testified that the term 'paper mission' is a common street term for a robbery. After Wearry's response, Young observed him cross Broad Street in the direction of the Maytag Laundromat. When Wearry arrived at the laundromat, Young observed that Henry Tadlock, the co-defendant, was there to greet him by shaking his hand. Young also knew Tadlock from the neighborhood. After shaking hands, Tadlock and Wearry then entered the laundromat with a third, unidentified male. At that point in time, Young also crossed Broad Street for a closer observation. Young then heard three or four gunshots emanate from the inside of the laundromat. Shortly after the gunshots were fired, Wearry emerged from the laundromat with a gun in his hand and a bag of what appeared to be coins or tokens. Young then looked inside the laundromat and saw Tadlock and the other male picking up dollar bills and coins from the floor of the laundromat. Shortly thereafter, Tadlock and the unidentified cohort exited the laundromat and drove away from the scene in a waiting parked car. Wearry escaped the scene on foot. After the threesome left the crime scene, Young peered into the window of the laundromat and saw an Asian male lying on the floor with blood emanating from his body. After Philadelphia police arrived at the crime scene, the deceased was transported to Temple University Hospital where he was pronounced dead at 4:35 o'clock A.M.

    That same evening, a friend of Young's drove him to Derrick Wearry's house. Upon seeing Wearry, Young asked, 'Why'd y'all kill him?' Wearry replied, 'He didn't want to give it up.' Wearry told Young that he 'got rid of the evidence' by placing tokens needed for the laundromat's washers and dryers and the deceased's wallet in an abandoned house next door. Wearry also informed Young that he was selling the tokens pilfered from the laundromat. Young provided a police statement on March 9, 1995, in which he supplied this information to the police. During the course of that police statement, Young likewise made photographic identifications of both Wearry and Tadlock. [citations to transcripts omitted]" *See* State Court Record: June 14, 1999 Superior Court Opinion at pp. 1-3 [quoting the trial court's opinion].

On June 24, 1997, Judge Latrone sentenced Petitioner to life imprisonment for the murder, a concurrent prison term of five to ten years for robbery, a concurrent term of four to eight years for criminal conspiracy, and a concurrent term of two and one-half to five years for PIC. *See* State Court Record: July 26, 2001 Superior Court Opinion at p. 1.

Mr. Wearry did not file post-verdict motions. However, he filed a direct appeal on June 27, 1997. *See* State Court Record: Notice of Appeal [marked Received June 27, 1997]. On appeal, he raised one issue: whether the trial court abused its discretion when it permitted the Commonwealth to impeach a defense witness with an arrest that did not result in a conviction and with an outstanding bench warrant stemming from that arrest three years earlier. *See* State Court Record: June 14, 1999 Superior Court Opinion at p. 4.

The Pennsylvania Superior Court affirmed the judgments of conviction, finding that Petitioner was not prejudiced by that the impeachment of defense witness Sara Miller, and, therefore, that the trial court did not abuse its discretion in permitting this testimony. *Id.* at pp. 13-14.

Mr. Wearry did not seek discretionary review in the Pennsylvania Supreme Court. *See* State Court Record: July 26, 2001 Superior Court Opinion at p. 2.

On August 17, 1999, Petitioner filed a timely *pro se* petition for relief under the Post Conviction Relief Act [PCRA], 42 Pa.C.S.A. 9541, *et seq.* In his PCRA petition, Mr. Wearry raised the following claims:

> 1. Petitioner was denied effective assistance of trial counsel, in that counsel failed to present the trial testimony of alibi witnesses Lacreasha Speach and Tonya Wearry.
> 2. Petitioner was denied his constitutional right to a fair trial, in that the trial court permitted the Commonwealth Attorney to elicit testimony from

Commonwealth witness Emmanuel Young indicating Petitioner's involvement in
unrelated criminal activity.

      3.   Petitioner was denied effective assistance of trial counsel in that
counsel failed to move for the declaration of a mistrial when the Commonwealth
Attorney elicited testimony from Commonwealth witness Emmanuel Young
indicating Petitioner's involvement in unrelated criminal activity.

      4.   Petitioner was denied effective assistance of trial counsel, in that
counsel failed to request the Court to provide a missing witness charge to the jury
regarding Jeff Jamal Jefferson.

      5.   Petitioner was denied effective assistance of appellate counsel, in that
counsel failed to argue that the evidence presented at trial was unreliable to
sustain the verdict.

      6.   Petitioner was denied effective assistance of appellate counsel, in that
counsel failed to argue that the evidence presented at trial was insufficient and
contrary to the verdict.  *See* State Court Record: "Petition For Post Conviction
Relief" [marked Received August 19, 1999] at pp. 8-21.

Counsel was appointed to represent Petitioner; he filed a no-merit *Finley* letter on August

31, 2000.  *See* State Court Record: August 31, 2000 letter, addressed to Judge Lewis, from

Attorney Griffith.

On October 12, 2000, the PCRA Court dismissed Mr. Wearry's petition, concluding that

the issues raised were meritless.  The Court permitted PCRA Counsel to withdraw from further

representation.  *See* State Court Record: October 12, 2000 Order.

Petitioner filed a *pro se* appeal from the dismissal of his PCRA petition.  On appeal, he

argued that the PCRA Court erred in failing to find that PCRA Counsel was ineffective in failing

to argue: (1) that trial counsel was ineffective for failing to present the testimony of alibi

witnesses and to request that the trial court charge the jury regarding a missing witness, and (2)

that trial counsel was ineffective for failing to argue on direct appeal that the evidence presented

at trial was unreliable, insufficient to sustain the verdict, and contrary to the verdict.  *See* State

Court Record: July 26, 2001 Superior Court Opinion at p. 2.

The Superior Court affirmed the PCRA Court, agreeing with the conclusions of the PCRA Court as set forth in its opinion dated February 26, 2001. *Id.* at p. 3.

Mr. Wearry filed a petition for allowance of appeal to the Supreme Court of Pennsylvania. *Allocatur* was denied on December 28, 2001. *See* State Court Record: Supreme Court of Pennsylvania Docket Entries.

On April 22, 2002, Petitioner signed and dated a habeas petition. It was filed in this Court on May 15, 2002. *See* Habeas Petition [Docket Entry No. 1].[2] As grounds for habeas relief, Petitioner raises the following issues:

> 1. "Petitioner was denied his constitutional right to due process of law, in that the state court failed to find Petitioner was denied effective assistance of trial counsel in that counsel failed to present the trial testimony of alibi witnesses Lacreasha Speach and Tonya Wearry."
>
> 2. "Petitioner was denied his constitutional right to due process of law, in that the state courts failed to find Petitioner was denied effective assistance of trial counsel, in that trial counsel failed to request the trial court to provide a missing witness charge to the jury regarding Jeff Jamal Jefferson."
>
> 3. "Petitioner was denied his constitutional right to due process of law, in that state court failed to find Petitioner was denied effective assistance of appellate counsel in that appellate counsel failed to argue on direct appeal that:
>     (a) the evidence is unreliable to sustain the verdict; and
>     (b) the evidence is insufficient and contrary to the verdict."
>
> 4. "Petitioner was denied his constitutional right to a fair trial, in that the state trial court permitted the Commonwealth to impeach defense witness Sara Miller concerning a bench-warrant issued three years prior to her trial testimony which involved her carrying a concealed pen-knife on school property." *See* Memorandum of Law in Support of Habeas Petition [Docket Entry No. 2] at pp. 10-23.

---

[2]    For the purposes of this Report and Recommendation, I will accept the earliest date, April 22, 2002, as the date of filing. *See Burns v. Morton*, 134 F.3d 109, 113 (3d Cir. 1998).

The Respondents have filed an answer to Mr. Wearry's habeas petition, arguing that his claims are procedurally defaulted and/or meritless. *See* Response to Habeas Petition [Docket Entry No. 18] at p. 6.

## DISCUSSION

### I. Timeliness.

The Antiterrorism and Effective Death Penalty Act of 1996 ["AEDPA" or the "Act"], signed into law on April 24, 1996, significantly amended the laws governing habeas corpus petitions.

One of the amended provisions, 28 U.S.C. §2244(d), imposes a one-year statute of limitations on state prisoners who seek federal habeas relief. A habeas petition must be filed within one year from the date on which the petitioner's judgment of conviction becomes final. *See* 28 U.S.C. §2244(d)(1).[3]

---

[3]      While the date on which the petitioner's conviction becomes final is typically the start date for the limitations period, the statute permits the limitation period to run from four different points in time, depending on which occurs latest. In addition to the date on which the petitioner's conviction becomes final, the start date can also run from: (1) "the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action"; (2) "the date on which the constitutional right asserted was initially recognized by the Supreme Court and made retroactively applicable to cases on collateral review"; or (3) "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence."

There is nothing in the pleadings before me to suggest that the start date for the statute of limitations period should be permitted to run from a point later in time than the date on which Mr. Wearry's conviction became final.

In the instant case, Mr. Wearry's state conviction became final on July 14, 1999. This is the last date on which Petitioner could have filed a timely request for discretionary review in the Pennsylvania Supreme Court. *See* Pa. R.A.P. 903(a)(which provides a thirty day appeal period after entry of the order from which the appeal is taken). Petitioner's one year statute of limitations began to run on July 15, 1999 and was tolled, for habeas purposes, while his state collateral attack in the PCRA forum was pending from August 17, 1999 through December 28, 2001. The present habeas petition, filed prior to the expiration of the one year statute of limitations (on or about November 27, 2002), is timely under §2244(d)(1).

## II.  Exhaustion/Procedural Default.

*A. Standards.*

The exhaustion rule, codified in 28 U.S.C. §2254[4], requires a federal court to postpone habeas corpus jurisdiction, absent exceptional circumstances, until "the applicant has exhausted

---

[4]    The exhaustion requirements of 28 U.S.C. §2254 provide:

> (b) (1) An application for writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that-
>> (A) the applicant has exhausted the remedies available in the courts of the State; or
>> (B)(I) there is an absence of available State corrective process; or
>> (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.
>   (2) An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.
> (3) A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement.

(c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

the remedies available in the courts of the State." The exhaustion requirement is rooted in

considerations of comity; the statute is designed to protect the role of the state court in

enforcement of federal law and to prevent disruption of state judicial proceedings. *Rose v.*

*Lundy*, 102 S.Ct. 1198, 1203 (1982); *Castille v. Peoples*, 489 U.S. 346, 349 (1989).

In order to demonstrate compliance with the exhaustion requirement, a habeas petitioner

must show that each claim which forms the basis of his federal habeas petition has been "fairly

presented" to the State courts. *Castille v. Peoples*, 489 U.S. at p. 351 (1989); *Picard v. Connor*,

404 U.S. 270, 275 (1971). Absent exceptional circumstances, Petitioner must first present all of

his constitutional claims in the state system, through the highest state tribunal, before seeking

relief in federal court. *See Picard v. Connor*, 404 U.S. at p. 275 (1971); *Swanger v. Zimmerman*,

750 F.2d 291 (3d Cir. 1984).

An unexhausted habeas claim becomes procedurally defaulted when the petitioner has no

additional state remedies available to pursue the issue. *See Wenger v. Frank*, 266 F.3d 218, 223-

24 (3d Cir. 2001)(when a claim has not been fairly presented to the state courts, but further state-

court review is clearly foreclosed under state law, the claim is procedurally defaulted

and may be entertained in a federal habeas petition only if there is a basis for excusing the

procedural default), *cert. denied,* 122 S.Ct. 1364 (2002).

Procedural default also occurs when an issue is properly asserted in the state system, but

is not addressed on the merits because of an independent and adequate state procedural rule. *See*

*Sistrunk v. Vaughn*, 96 F.3d 666, 673 (1996); and *McCandless v. Vaughn,* 172 F.3d 255, 260 (3d

Cir.1999)("If the final state court presented with a federal claim refuses to decide its merits based

on an established state rule of law independent of the federal claim and adequate to support the refusal, federal habeas review is foreclosed unless there is cause and prejudice or a showing of innocence.").

_____Procedural default may be excused if the habeas petitioner can show "cause" for the default and "prejudice attributable thereto", or demonstrate that the failure to consider his habeas claim will result in a "fundamental miscarriage of justice." *Wenger,* 266 F.3d at p. 224 (3d Cir. 2001). *See also McCandless,* 172 F.3d at 260 (3d Cir.1999).

   *B. Habeas Claim Number Four Is Procedurally Defaulted.*

   Petitioner's last claim, that he was denied his right to a fair trial because the Commonwealth was permitted to cross-examine defense witness Sara Miller concerning a three year old bench warrant, was presented on direct appeal to the Superior Court.  It was not, however, presented to the Pennsylvania Supreme Court because Petitioner did not file an *allocatur* petition to the state's highest court.

   At the time of Petitioner's direct appeal, discretionary review by the Pennsylvania Supreme Court was part of the ordinary process of appellate review.  *See Wenger*, 266 F.3d at p. 225 (3d Cir. 2001)(holding that Pennsylvania Supreme Court Order 218, which declared "in all appeals from criminal convictions or post-conviction relief matters, a litigant shall not be required to petition for rehearing or allowance of appeal following an adverse decision by the Superior Court in order to be deemed to have exhausted all available state remedies [. . .]," did not retroactively alter the nature of the ordinary appellate review procedure in the Commonwealth).

Because Mr. Wearry's failure to seek discretionary review in the Pennsylvania Supreme Court

preceded Order 218, his fourth habeas claim is not exhausted for habeas purposes.  Any attempt

by Petitioner to present this issue in a second PCRA petition would be untimely under state law.

Because Petitioner is foreclosed from seeking state review of his fourth habeas claim, it is

procedurally defaulted, and not subject to federal habeas review, absent a showing of cause and

prejudice, or miscarriage of justice.  Petitioner has not argued, nor does the record before me

suggest, that he can meet the burden of proof necessary to excuse this procedural default.[5]

    *C.  Habeas Claims One, Two and Three Are Exhausted.*

    Petitioner's three remaining habeas claims were all presented in the PCRA forum, from

the initial level through the filing of an *allocatur* petition to the Pennsylvania Supreme Court.

All three are properly exhausted and may be reviewed by this Court.  I will address each on the

merits.

**III.  Merits.**

    *A.  Habeas Standards of Review.*

    Because Mr. Wearry's habeas petition was filed after the effective date of AEDPA[6], the

amended habeas standards apply to his habeas claims.

    AEDPA precludes habeas relief on "any claim that was adjudicated on the merits in State

court proceedings unless the adjudication of the claim-

    (1) resulted in a decision that was contrary to, or involved an unreasonable
    application of, clearly established Federal law, as determined by the Supreme

---

[5]  In support of his claims for habeas relief, Mr. Wearry states that he is innocent of the crimes
for which he has been convicted, and that habeas relief is necessary to correct a miscarriage of
justice.  *See* Memorandum of Law in Support of Habeas Petition at p. 9.  These self-serving,
unsupported declarations do not rise to the level of proof necessary to excuse Petitioner's
procedural default.

[6]  Pub.L. No. 104-132, 110 Stat. 1214, 1219 (1996), effective date April 24, 1996.

Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. §2254(d)(Supp. 1998).

In interpreting the above language, the Third Circuit has discussed the appropriate degree of deference which AEDPA requires a federal habeas court to accord a state court's construction of federal constitutional issues and interpretation of Supreme Court precedent. *See Matteo v. Superintendent, SCI Albion*, 171 F.3d 877 (3d Cir.), *cert. denied*, 120 S.Ct. 73 (1999). The Third Circuit has held that under 28 U.S.C. §2254(d)(1), a two step inquiry is warranted. The majority agreed that:

(1) The proper initial inquiry for the habeas court is whether the state court decision was "contrary to" Supreme Court precedent that governs the petitioner's claim. Relief is appropriate only when the petitioner shows that "Supreme Court precedent requires an outcome contrary to that reached by the relevant state court." *Id.* at 891 (3d Cir. 1999).

(2) In the absence of such a showing, the habeas court must then ask whether the state court decision represents an "unreasonable application of" Supreme Court precedent. This inquiry is an objective one, namely, "whether the state court decision, evaluated objectively and on the merits, resulted in an outcome that cannot reasonably be justified." *Matteo*, 171 F.3d at 891 (3d Cir. 1999).

The United States Supreme Court has set forth the scope of habeas review after AEDPA. *See Williams v. Taylor*, 120 S.Ct. 1495, 529 U.S. 362 (2000). According to the *Williams* majority:

"We [the Supreme Court Justices] all agree that state-court judgments must be upheld unless, after the closest examination of the state-court judgment, a federal court is firmly convinced that a federal constitutional right has been violated. [ . . . ] In sum, the [AEDPA] statute directs federal courts to attend every state-court judgment with utmost care, but it does not require them to defer to the opinion of every reasonable state-court judge on the content of federal law. If, after carefully weighing all the reasons for accepting a state court's judgment, a federal court is convinced that a prisoner's custody– or, as in this case, his sentence of death– violates the Constitution, that independent judgment should

prevail." *Williams*, 120 S.Ct. at 1511 (2000).

Under AEDPA, a federal reviewing court must presume that factual findings of state trial and appellate courts are correct. The presumption of correctness may only be overcome on the basis of clear and convincing evidence to the contrary. *See Stevens v. Delaware Correctional Center, et al.,* 295 F.3d 361, 368 (3d Cir. 2002).

   *B. Ineffective Assistance of Counsel Standard.*

In order for a petitioner to establish ineffective assistance of counsel under the federal *Strickland* standard, he must show: [1] that counsel's performance was "deficient" and [2] that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

To demonstrate that counsel's performance was deficient, the petitioner must show that counsel's representation fell below an objective standard of reasonableness based on the facts of the particular case, viewed as of the time of counsel's conduct. *Senk v. Zimmerman*, 886 F.2d 611, 615 (3d Cir. 1989)(*quoting Strickland*, 466 U.S. at 688, 690(1984)), *cert. denied*, 493 U.S. 1035 (1990).

To establish prejudice, the petitioner must demonstrate a reasonable probability that, but for unprofessional errors, the result would have been different. This standard is less strict than the
"more likely than not" standard. *Frey v. Fulcomer*, 974 F.2d 348, 358 (3d Cir. 1992), *cert. denied*, 507 U.S. 954 (1993). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 358 (*quoting, Strickland*, 466 U.S. at 694).

Because the United States Supreme Court has identified a rule which governs Petitioner's

ineffective assistance of counsel claims, the *Strickland* standard "shape[s] the contours of an appropriate analysis of a claim of constitutional error to merit review of a state court's decision under section 2254(d)(1)'s 'contrary to' prong." *Matteo*, 171 F.3d at 886 (3d Cir. 1999).

> *C. The Superior Court's Rejection of Petitioner's Three Habeas Claims Is Neither Contrary To, Nor An Unreasonable Application Of, Federal Law.*

On direct appeal, the Superior Court of Pennsylvania agreed with the PCRA Court's conclusions, and affirmed on the basis of the PCRA Court's "thorough" opinion.   *See* State Court Record: July 26, 2001 Superior Court Opinion at p. 3.

In analyzing the three ineffective assistance of counsel claims, the PCRA Court applied the Pennsylvania standard, which is consistent with the federal *Strickland* standard.[7]  *See* State Court Record: February 27, 2001 PCRA Court Opinion at p. 4.

> 1.  Habeas Claim One: Ineffective Assistance of Counsel for
>        Failure to Present Alibi Witnesses.

Petitioner asserts that his family members, Lacreasha Speach and Toyna Wearry, were present at his trial and available to testify that Petitioner was with them, and not near the laundromat, at the time of the crime.  According to Petitioner, trial counsel convinced him to forego his alibi defense, advising Petitioner that the jury might not believe Ms. Speach and Ms. Wearry because they were Petitioner's family members.  Counsel's advice, to forego the only defense available to Petitioner, was unreasonable, and prejudicial.  Petitioner contends that if he had presented these alibi witnesses, "the jury would have been compelled to reject

---

[7]  The PCRA Court, applying state law, found that, in order to establish ineffective assistance of counsel, Petitioner was required to prove by a preponderance of the evidence: (1) the underlying claim is of arguable merit; (2) that counsel's performance had no reasonable basis, and (3) that counsel's ineffectiveness so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place.

[Commonwealth witness] Emmanuel Young's suspicious accusations, and return a verdict of not guilty." *See* Memorandum of Law in Support of Habeas Petition at pp. 5-10.

With regard to the alleged failure of trial counsel to present available alibi witnesses, the PCRA Court determined that trial counsel had a reasonable basis for withdrawing the alibi defense and that, based on a colloquy conducted during Petitioner's trial, Petitioner was in agreement with this decision. The PCRA Court quoted the following trial exchange:

| | |
|---|---|
| "COUNSEL: | Mr. Wearry, I want to ask you some questions about certain alibi information that we have investigated. You are aware, are you not, that an alibi notice was filed in your particular case? |
| DEFENDANT: | Right. |
| | |
| COUNSEL: | You and I have gone over the various witnesses who have been identified and whether or not it would be in your self-interest to have these people testify; right? |
| DEFENDANT: | Right. |
| | |
| COUNSEL: | After consultation, you have made your decision that it is in your best interest that these alibi witnesses will not testify, that is, because you believe the way the case is now positioned that it is in your best interest to go to the jury with the evidence that is not [sic] on the record? |
| DEFENDANT: | Right. |
| | |
| COUNSEL: | Are there any questions that I have posed to you or are there any witnesses that you want to testify who have not been called by me? |
| DEFENDANT: | No. |
| | |
| COUNSEL: | Are you satisfied with my representation to this point? |
| DEFENDANT: | Yes, sir. (N.T. 4/3/97 pp. 36-37)." |

*See* State Court Record: February 27, 2001 PCRA Court Opinion at pp. 5-6.

The PCRA Court, concluding that Petitioner's underlying claim was without merit, rejected his first ineffective assistance of counsel claim. *Id.* at p. 6.

Under the AEDPA standard of review, the PCRA Court's conclusion (which was accepted by the Superior Court) that trial counsel did not provide ineffective assistance in withdrawing Petitioner's alibi defense at trial, is neither contrary to, nor an unreasonable application, of the *Strickland* standard. The state court's decision is supported by the trial record, and is objectively reasonable. The PCRA Court's rejection of this claim must be upheld.

2. Habeas Claim Two: Ineffective Assistance of Counsel for
   Failure to Request a Missing Witness Charge.

In his habeas petition, Mr. Wearry argues that trial counsel was ineffective for failing to request a missing witness charge regarding an individual named "Jeff Jamal Jefferson." According to Petitioner, Commonwealth witness Emmanuel Young "provided the only evidence against Petitioner in this trial." At trial, Mr. Young testified that after the crime, he and Jeff Jamal Jefferson went to Petitioner's house, where Petitioner confessed in their presence. Petitioner asserts that Jeff Jamal Jefferson was "a material witness," who was "unavailable to the defense." Therefore, trial counsel "was constitutionally required" to request a missing witness charge. A missing witness charge "would have informed the trial jury that they were free to draw [an] adverse inference in the prosecution's failure to produce the trial testimony of Jefferson; that they could infer Jefferson would have testified unfavorabl[y] for the government." *See* Memorandum of Law in Support of Habeas Petition at pp. 10-14.[8]

The PCRA Court described the underlying facts as follows:

"This issue arose out of the testimony of Commonwealth witness, Emmanuel Young. Young testified that the defendant told him he planned to commit a robbery; he then observed the defendant enter the Laundromat; gunshots were

---

[8] Petitioner contends, in this forum, that there is no individual named Jeff Jamal Jefferson, and that Mr. Young "falsely created Jefferson to enhance the believability of his trial testimony – that he went to Petitioner's home where Petitioner confessed the crime to him." *Id.* at p. 11.

heard; and he saw the defendant run from the Laundromat with a bag in one hand while stuffing a gun in the front of his pants with the other hand.  Young also testified that later that evening, he accompanied a friend, Jeff Jamal (hereinafter 'Jeff') to the defendant's house.  Young stated that he asked the defendant: 'Why you all kill him.'  Young said the defendant replied: 'Cause he didn't want to give it up.'  (N.T. 3/26/97 pp. 52-53).  Young stated that defendant told him that he hid evidence in an abandoned house next door.  (N.T. 3/26/97 pp. 53-54).  Young also stated that his friend Jeff was present during this conversation with the defendant; however, Jeff was not called to testify in this case."  *See* State Court Record: February 27, 2001 PCRA Court Opinion at pp. 6-7.

The PCRA Court set forth the Pennsylvania "missing witness" rule:

"When a potential witness is available to only one of the parties to a trial, and it appears that this witness has special information material to the issue, and this person's testimony would not be merely cumulative, then if such party does not produce the testimony of this witness, the jury may draw an inference it would have been favorable."  *Id*. at p. 7.

Noting that there was neither a statement from Jeff Jamal, nor any other indication that he was available or within the control of the Commonwealth, the PCRA Court determined that Jeff Jamal was not a "missing witness" as the term is defined under Pennsylvania law.  Therefore, Petitioner was not entitled to a missing witness charge, and his counsel was not ineffective for failing to request one.  *See* State Court Record: February 27, 2001 PCRA Court Opinion at p. 7-8.

It is not the province of this court to reexamine state-court determinations on state-law questions.  *Estelle v. McGuire,* 502 U.S. 62, 67-68 (1991).  Giving the required deference to the PCRA Court's determination that Petitioner was not entitled to a missing witness charge under Pennsylvania law, the state court's rejection of Petitioner's ineffective assistance of counsel claim for failure to request this instruction must be upheld.  It is neither contrary to, nor an unreasonable application of, the federal *Strickland* standard.

3. Habeas Claim Three: Ineffective Assistance of Counsel for
Failure to Challenge Reliability and Sufficiency of Evidence.

Petitioner argues that the only evidence which connected him to the murder was the testimony of Emmanuel Young.  This testimony, according to Petitioner, was factually contradicted in every material point, and did not satisfy the quality required by Due Process for guilt beyond a reasonable doubt.  Trial counsel properly moved for an acquittal, and thus, preserved the issue for appeal.  Petitioner asserts that appellate counsel was ineffective for abandoning this claim on appeal.  *See* Memorandum of Law in Support of Habeas Petition at pp. 15-20.

The PCRA Court relying on the April 28, 1998 trial court opinion (which discussed the issue at length), concluded that the evidence was sufficient to support the verdict and that appellate counsel was not ineffective for failing to pursue a meritless claim.  *See* State Court Record: February 27, 2001 PCRA Court Opinion at pp. 11-13.

In its April 28, 1998 opinion, the trial court reviewed the evidence presented at trial to determine "whether, viewing the evidence in the light most favorable to the Commonwealth as verdict winner and drawing all proper inferences favorable to the Commonwealth, the jury could reasonably have determined all elements of the crime to have been established beyond a reasonable doubt."  *See* State Court Record: April 28, 1998 Trial Court Opinion at p. 3.

In applying the sufficiency of evidence standard, the trial court made the following findings:

> (1) While there was no available eyewitness to the killing, there was sufficient evidence of record to establish that Petitioner participated either personally and/or vicariously in the first degree murder.
> (2) There were two pieces of evidence which supported the fact that Petitioner, may have been the actual shooter - Emmanuel Young testified that saw Petitioner leave the laundromat with a gun in his hand after hearing three or four gunshots, and that later that evening Petitioner told Young that they had shot the victim at the laundromat because he didn't want to give up the money.
> (3) Even if Petitioner was not the actual shooter, his actions, as testified to by

Young, demonstrated that Petitioner was "an extremely willing co-conspirator."
(4) There was time for the Petitioner and his co-conspirators to formulate the required premeditation for first degree murder.
(5) Willingness and intent to kill were certainly established by the fact that one of the shots fired by Petitioner struck the victim in the center of the chest.
(6) There can be no doubt that Petitioner entered the laundromat, with co-defendant Harry Tadlock and an unidentified third person, with the jointly held intent to rob its proprietor.
(7) Petitioner's exit from the laundromat, wielding a handgun subjected him to the degree of culpability for first degree murder, even if he was not the actual shooter.
(8) There was more than sufficient evidence to support Petitioner's robbery conviction.  A fully executed theft aimed at taking money and/or valuables possessed by the owners of the Maytag Laundromat was accomplished by Petitioner and his co-conspirators.  Petitioner also accomplished a fully executed theft against the personal property of the victim by taking his wallet.
(9) The testimony of Emmanuel Young clearly demonstrated that there was a conspiracy between Petitioner, co-defendant Harry Tadlock and a third man to rob the Maytag Laundromat, and that one or more overt acts were performed by the co-conspirators in furtherance of the conspiracy.
(10) There was ample evidence to establish that Petitioner possessed an instrument of crime.  Emmanuel Young testified that, shortly after hearing several gunshots, he saw Petitioner emerge from the laundromat with a gun in his hand.  By carrying a gun during the perpetration of the robbery/shooting, and possibly being the actual shooter, Petitioner made clear his intent to employ the gun criminally.  *Id.* at pp. 3-24.

A sufficiency of evidence challenge is only reviewable in the federal habeas forum as a due process challenge, and is a mixed question of law and fact.  The standard of review under AEDPA on a sufficiency of evidence due process claim is whether, deferring to the state court's findings of fact, the state court determination is contrary to, or involves an unreasonable application of, federal law.  *See Ross v. Kyler*, C.A. No. 01-2579, 2002 WL 188713 at *3 (E.D.Pa. February 4, 2002).  *See also* 28 U.S.C. §2254(d)(1) & (2).

The sufficiency of evidence standard applied by the trial court was consistent with the federal due process standard which requires a verdict to be reversed if "no rational trier of fact could find guilt beyond a reasonable doubt."  *See Ross*, 2002 WL 188713 at *4 (E.D.Pa. February 4, 2002)(*citing Jackson v. Virginia,* 443 U.S. 307, 324, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)).

*See also Marra v. Larkins*, 46 Fed.Appx. 83, 85 (3d Cir. 2002), *cert. denied*, 123 S.Ct. 903 (2003). Thus, the trial court's ruling on the sufficiency of the evidence issue is not contrary to federal law.

Nor is it an unreasonable application of federal law. The trial court applied the correct standard with a thoughtful analysis, and its conclusion is objectively reasonable. Under AEDPA, this court must, therefore, defer to the state court's decision. *See Ross*, 2002 WL 188713 at *4 (E.D.Pa. February 4, 2002).

The PCRA Court also addressed Petitioner's challenge to the weight of the evidence. The Court found that any alleged inconsistencies in Emmanuel Young's testimony were brought to the jury's attention during extensive cross-examination of this witness. The credibility and weight of the evidence was within the sole province of the jurors. Thus, the Court rejected Petitioner's ineffective assistance of appellate counsel claim, holding that counsel was not ineffective for failing to raise a meritless issue. *See* State Court Record: February 27, 2001 PCRA Court Opinion at pp. 11-12.

A claim that a verdict is against the weight of the evidence is essentially a matter of state law, and does not raise a federal constitutional question unless the record is completely devoid of evidentiary support in violation of a petitioner's due process rights. *Douglas v. Henricks,* 236 F.Supp.2d 412, 435-36 (D.N.J. 2002).

As discussed above, the sufficiency of evidence standard applied by the trial court was consistent with the federal due process standard. The trial court's decision was not an unreasonable application of federal law. Under AEDPA, the trial court's decision is entitled to deference, and must be upheld on habeas review.

**RECOMMENDATION**

Consistent with the above discussion, it is recommended that Petitioner's habeas petition, filed under 28 U.S.C. §2254, be DENIED AND DISMISSED WITHOUT AN EVIDENTIARY HEARING.  It is further recommended a finding be made that there is no probable cause to issue a certificate of appealability.

BY THE COURT:

_____
M. FAITH ANGELL
UNITED STATES MAGISTRATE JUDGE